UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANET ELLIS

v.                                    CASE NO.  3:05CV 1623 (JBA)

SOLOMON AND SOLOMON, P.C.
JULIE S. FARINA                       February 25, 2008
DOUGLAS FISHER

PLAINTIFF'S LOCAL RULE 56(a)1 STATEMENT

Plaintiff relies on the following material facts as to which there is no issue to be tried.

Documents referenced are attached.

1.  Plaintiff used the Citibank account at issue, Deposition Exs. 4, 5, for personal purposes.

2.  Deposition Exhibit 4 is a letter sent on or about the date thereof by bulk mail from Solomon and Solomon PC to plaintiff. Fisher Dep. p. 46 lines 2-3, 9-17.

3.  Deposition Ex. 5 is the summons and complaint served on plaintiff on May 31, 2005.

4.  Each defendant regularly collects alleged obligations to pay money arising out of transactions in which the subject of the transaction is primarily for personal, family or household purposes. Response to Admission 6.

5.  After 1998, all Citibank files transmitted to Solomon and Solomon were transmitted for suit. Solomon Dep. p. 43, lines 9-13; p. 56 lines 16-24.[1] Fisher Dep. p. 40 line 22 to p. 41 line 12.

6.  On May 12, 2005, Plaintiff's account was transmitted to Solomon and Solomon for

_____

[1] Defendant Farina resumed using the last name Solomon after this lawsuit. Solomon Dep. p. 26 lines 12-21.

suit. Solomon Dep. p. 48 lines 20-24.

7.  The basic text of Ex. 4, the letter mailed on May 13, was prepared and approved by defendant Fisher in 2003. Response to Admission 8; Fisher Dep. p. 9 line 24 to p. 10 line 14.

8.  Defendant Fisher is responsible for FDCPA compliance and staff FDCPA training at Solomon and Solomon, including overall collection practices and procedures. Solomon Dep. p. 24 lines 6-19; Fisher Dep. p. 6 line 8 to p. 7 line 18; p. 9 lines 5-23.

9.  By May 19, 2005, a draft summons and complaint had been prepared. Solomon Dep. p. 44 lines 19 Fisher Dep. p. 32.

10. By May 23, 2005, the summons and complaint had been signed by defendant Farina, recognized to prosecute by defendant Fisher, and forwarded to a process server. Solomon Dep. p. 44 lines 18-20; Fisher Dep. p. 19 line 15 to pl. 20 line 17; p. 32 lines 6-23.

11. Fisher was not a Connecticut resident. Solomon Dep. p. 33 lines 11-12; Fisher Dep. p. 20 lines 18-24.

12. Solomon and Solomon has and had no employees at 57 North Street, Danbury CT. It has an ability to use space there in the event it was required to have a local office for Federal Practice. Response to Interrogatory 7.

13. Solomon and Solomon had no set waiting period between the initial communication that included the 30 day notice and the issuance of a summons and complaint. Solomon Dep p. 43 line 14 to p. 44 line 7 and p. 44 line 23 to p. 45 line 3; Fisher Dep. p. 41 line 17 to p. 42 line 13.

THE PLAINTIFF


BY_____/s/ Joanne S. Faulkner_____
          JOANNE S. FAULKNER ct04137
          123 Avon Street
          New Haven, CT 06511-2422
          (203) 772-0395
          j.faulkner@snet.net

Certificate of Service

I hereby certify that on February 25, 2008, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ Joanne S. Faulkner_____
          JOANNE S. FAULKNER ct04137
          123 Avon Street
          New Haven, CT 06511-2422
          (203) 772 0395
             j.faulkner@snet.net

# PLAINTIFF'S AFFIDAVIT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANET ELLIS

v.                                      CASE NO.  3:05CV 1623 (JBA)

SOLOMON AND SOLOMON, P.C.
JULIE S. FARINA
DOUGLAS FISHER

**AFFIDAVIT**

1. I am the plaintiff. I am over the age of 18 and believe in the obligation of an oath.

2. I received the attached letter dated May 13, 2005, from Solomon and Solomon

   concerning my Citibank account.

3. My Citibank account was a credit card that I used for personal purposes.

4. On May 31, 2005, I was served with a summons and complaint concerning the

   same Citibank account.

I verify under the penalty of perjury that the foregoing is true and correct.


Dated **02 / 18 /08**                              *Janet Ellis*
                                                Janet Ellis

# EXHIBIT 4: THE LETTER

OLOMON
AND
OLOMON ▮▮▮ PC

Attorneys at Law
*Mailing Address:* Columbia Circle, Box 15019, Albany, New York 12212-5019
*Located at:* Five Columbia Circle, Albany, New York 12203
Toll Free 1-800-233-7515  Fax: (518) 456-0651

Se Habla Español

Our office is open Monday through Thursday 8am to 11pm and Friday
8am to 5pm (EST).  Please call 1-888-456-3100 (toll free) for assistance.

05/13/2005

JANET ELLIS                        16845563
304 TACONIC RD
GREENWICH             CT    06831

RE: OUR FILE NO. 16845563  ACCT NO.   5424180886405288
    CITIBANK (SOUTH DAKOTA) N.A.
    Amount due as of 05/13/2005:    $17809.13

Dear Sir/Madam:

    The above named creditor has referred this account to our office for
collection with a notation that all communications cease and desist.
Under Federal Law, however, we must provide you with certain disclosures.

    This is an attempt to collect a debt.  Any information obtained will
be used for that purpose.  This communication is from a debt collector.
Calls are randomly monitored to ensure quality service.

                         VALIDATION NOTICE
    Unless you notify this office within thirty (30) days after receiving
this notice that you dispute the validity of the debt, or any portion
thereof, the debt will be assumed to be valid by this office.  If you notify
this office in writing within the thirty (30) day period that the debt, or
any portion thereof is disputed, this office will obtain verification of the
debt or a copy of a judgment against you and a copy of such verification
will be mailed to you by this office.  Upon your written request within the
thirty (30) day period, this office will provide you with the name and
address of the original creditor, if different from the current creditor.

                         Very truly yours,

                         SOLOMON AND SOLOMON, P.C.



PLAINTIFF'S
EXHIBIT
4
1-16-08  DD

PENGAD 800-631-6989

# EXHIBIT 5: THE SUMMONS AND COMPLAINT

| | | |
|---|---|---|
| **UMMONS - CIVIL** (except Family Actions) CV-1 Rev. 1-2000 .S. § 51-346, 51-347, 51-349, 51-350, 52-45a, 48, 52-259  P.B. Secs 3-1 thru 3-21, 8-1 | **STATE OF CONNECTICUT** **SUPERIOR COURT** www.jud.state.ct.us | "X" ONE OF THE FOLLOWING: _Amount, legal interest or property in demand, exclusive of interest and costs is:_ ☐ less than $2,500 ☐ $2,500 through $14,999.99 ☒ $15,000 or more ("X" if applicable) ☐ _Claiming other relief in addition to or in lieu of money or damages._ |

**INSTRUCTIONS**
ype or print legibly; sign original summons and conform all copies of the summons.
Prepare or photocopy conformed summons for each defendant
Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if
here are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint
After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
The party recognized to pay costs must appear personally before the authority taking the recognizance.
Do not use this form for actions in which an attachment, garnishment or replevy is being sought.  See Practice Book Section 8-1
or other exceptions.

O: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are  hereby
ommanded to make due and legal service of this Summons and attached Complaint.

| | | |
|---|---|---|
| JUDICIAL DISTRICT ☐ HOUSING SESSION   ☐ G.A. NO. | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) **STAMFORD-NORWALK** | RETURN DATE (Mu., day, yr.) (Must be a Tuesday) **7·19·05** |
| DDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350) 3 HOYT STREET, STAMFORD, CT 06905 | | CASE TYPE (See JD-CV-1c) Major  **C**   Minor  **40** TELEPHONE NO. (w/area code, |

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) NOTE: Individuals' Names: Last, First, Middle Initial | | PTY NO. |
|---|---|---|---|
| RST NAMED PLAINTIFF | CITIBANK (SOUTH DAKOTA), N.A., 7930 NW 110TH STREET, KANSAS CITY, MO 64153 | ☐ Form JD-CV-2 attached | |
| Additional Plaintiff | | | 01 |
| RST NAMED EFENDANT | JANET ELLIS, 304 TACONIC RD, GREENWICH, CT 06831 | | 02 |
| Additional Defendant | | | 50 |
| Additional Defendant | | PLAINTIFF'S EXHIBIT S 1-16-08 DD | 51 |
| Additional Defendant | | | 52 |
| | | | 53 |

**NOTICE TO EACH DEFENDANT**

YOU ARE BEING SUED.

This paper is a Summons in a lawsuit.

The Complaint attached to these papers states the claims that each
Plaintiff is making against you in this lawsuit.

To respond to this Summons, or to be informed of further proceedings,
ou or your attorney must file a form called an "Appearance" with the
Clerk of the above-named Court at the above Court address on or
efore the second day after the above Return Date.

f you or your attorney do not file a written "Appearance" form on time,
judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above
Court address.

7. If you believe that you have insurance that may cover the
claim that is being made against you in this lawsuit, you
should immediately take the Summons and Complaint to
your insurance representative.

8. If you have questions about the Summons and Complaint,
you should consult an attorney promptly. **The Clerk of
Court is not permitted to give advice on legal questions.**

| | | |
|---|---|---|
| 5/23/05 | SIGNED (Sign and "X" proper box) ☒ Comm. of Superior Court ☐ Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT JULIE S. FARINA |

THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:

| AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) OMON AND SOLOMON, P.C., 5 COLUMBIA CIRCLE, ALBANY NY 12203 | TELEPHONE NUMBER 518-456-7200 | JURIS NO. (If atty. or law firm) 421261 |
|---|---|---|
| AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code) GLAS M. FISHER, SOLOMON SOLOMON PC, 57 NORTH, 210-211, DANBURY, 06810 | | SIGNATURE OF PLAINTIFF IF PRO SE |

| # DEFS | # CNTS. | SIGNED (Official taking recognizance, "X" proper box) | | |
|---|---|---|---|---|
| 1 | 1 | | ☒ Comm. of Superior Court ☐ Assistant Clerk | For Court Use Only |

HIS SUMMONS IS SIGNED BY A CLERK:
e signing has been done so that the Plaintiff(s) will not be denied access to the courts.
s the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.

FILE DATE

A TRUE COPY
FF   DAILL   VE

Solomon File 16845563
5424180886405288

turn Date:

cket Number:

```
*********************************
TIBANK (SOUTH DAKOTA) N.A.        *    SUPERIOR       COURT
                                  *    STAMFORD—NORWALK JUDICIAL
                       Plaintiff  *    DISTRICT
                                  *    05/19/05
                                  *
NET ELLIS                         *
                                  *
                                  *
                                  *
                       Defendant  *
*********************************
```

## COMPLAINT

1. Plaintiff is A NATIONAL BANKING ASSOCIATION.

2. Defendant(s) reside at: 304 TACONIC RD
                           GREENWICH              CT   06831

3. That the Defendant(s) was extended credit.

4. Defendant(s) failed to make payments for the credit extended.  The
total balance due is   $17809.13

5. That heretofore, Plaintiff rendered to Defendant(s) monthly, full and
ue accounts of the indebtedness owing by the Defendant(s) as a result of the
redit extended, in an amount as hereinabove set forth which account statements
ere delivered to and accepted without objection by the Defendant(s) resulting
n an account stated for the amount set forth above.

HEREFORE, Plaintiff prays for the following relief:

1. Money damages pursuant to the account stated   $17809.13
2. Costs and disbursments,
3. Such other and further relief as the Court may deem just and equitable.

CITIBANK (SOUTH DAKOTA) N.A.

by its attorney,

_____
Julie S. Farina
Solomon and Solomon, P.C.
5 Columbia Circle
Albany, NY  12203
Juris No 421261
(518) 456-7200

his is an attempt to collect a
ebt.  Any information obtained
ill be used for that purpose.
his communication is from a debt
ollector.

# DEFENDANTS' DISCOVERY RESPONSES
# (EXCERPTS)

3.    **Defendant alleged that Plaintiff has a Connecticut address**

Reply:  Admitted as to Solomon.

Denied as to the individual Defendants Fisher and Farina as they have no "records" and are not in business for themselves.

4.    **Defendant brought suit against Plaintiff in Connecticut.**

Reply:  Admitted to Solomon and Solomon, P.C.

Denied as to the individual Defendants Fisher and Farina as they are not in business and do not bring suit except as employees of Solomon and Solomon, P.C.

5.    **Defendant Farina's principal business in Connecticut is the collection of individual accounts owed to Citibank and other creditors, using the instrumentalities of interstate commerce, including telephone and mail services.**

Reply:  Denied.  Defendant Farina neither operates individually, as a d.b.a., partner or corporation as a "business" in Connecticut.  Farina's is a non-resident acting in Connecticut on behalf of a corporate employer.  Farina is an employee of Solomon and Solomon, P.C. and does not  herself have a principal business apart from that of Solomon and Solomon, P. C..

6.    **Defendant Solomon and Solomon's principal business in Connecticut is the collection of individual accounts owed to Citibank and other creditors, using the instrumentalities of interstate commerce, including telephone and mail services.**

Reply:  Admitted

2

7. **Defendant Fisher's principal business is the collection of individual accounts owed to Citibank and other creditors, using the instrumentalities of interstate commerce, including telephone and mail services.**

   Reply: Denied. Defendant Fisher neither operates individually, as a d.b.a., partner or corporation as a "business" in Connecticut. Fisher is a non-resident acting in Connecticut on behalf of a corporate employer. Fisher is an employee of Solomon and Solomon, P.C. and does not himself have a principal business apart from that of Solomon and Solomon. P. C..

8. **In 2003 Fisher drafted and approved for use the form letter dated 5/13/05 that defendant Solomon sent to Plaintiff.**

   Reply: Admitted

9. **At the time the form letter dated 5/13/05 was sent to Plaintiff no attorney had reviewed Plaintiff's file.**

   Reply: Denied:

10. **Before the state court lawsuit against plaintiff was presented to defendant Farina for signature, no attorney had reviewed Plaintiff's file.**

    Reply: Denied.

7  State the Defendant's office locations and the number and job descriptions of employees at each

> Response:
>
> The firm has an office at 5 Columbia Circle Albany NY.  The firm has approximately 100 staff at that location.  Staff include attorneys, managers, accounting staff , legal assistants, file clerks, supervisors and client services representatives.
>
> The firm has a small office in Utica, NY at 502 Court Street, Suite 201 Utica, New York 13502 with approximately 15 employees including a manager and support staff.
>
> The firm maintains an ability to use space at 57 North Street, Danbury, CT 06810 in the event it was required to have a local office for Federal Practice.  It has no employees at that location.

8  State all facts on the basis of which the FDCPA does not apply to the collection of the Plaintiff's alleged Citibank account.

> Response:  Defendants do not know whether the account balance in question was incurred for personal purposes or that it was not incurred for personal purposes.

9  State all facts on which you deny the Court has jurisdiction.

Response

The Plaintiff has not only sued Solomon but two employees.  The complaint fails

to include any factual connection to Connecticut other than the employees'

involvement as employees.  Courts in this district have held that personal

jurisdiction over a director or officer let alone an employee must be based on

conduct apart from acts in the director or officer's official capacity.  Personal

jurisdiction may not be asserted over the individual employees based on the

transactions of business in Connecticut where the employees did not transact any

4

business other than through the corporation.  To establish long-arm jurisdiction over corporate employees, plaintiff must prove "that the non-resident transacted business in Connecticut in an individual capacity and not merely on behalf of a corporate employer."

10.     **State all facts on which you deny that the individual defendants are debt collectors.**

Reply

To the extent the court has no jurisdiction over the individual defendants as outlined in the Reply to Interrogatory 10, they are not debt collectors for purposes of this action and/or may not have any direct involvement in the collection of the plaintiff's account.

As to the objections:

THE DEFENDANTS,

By: _____

Jonathan D. Elliot
Federal Bar No.(ct05762)
Kleban & Samor, P.C.
2425 Post Road
Southport, CT 06490
(203) 254-8969

# DEPOSITION OF JULIE SOLOMON (f/k/a/ FARINA) (EXCERPTS)

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
----------------------------------------------------
JANET ELLIS,

                            Plaintiff,

      - against -       Case No.:  3:05CV 1623(JBA)

SOLOMON AND SOLOMON, P.C.
JULIE S. FARINA
DOUGLAS FISHER,

                            Defendants.
----------------------------------------------------

        STENOGRAPHIC MINUTES OF EXAMINATION BEFORE

TRIAL conducted of Defendant, JULIE BETH SOLOMON, held

pursuant to Notice on the 16th day of January 2008 at

119 Washington Avenue, 3rd Floor Conference Room,

Albany, New York, commencing at 10:05 a.m., before

Diane Daly Gage, a Shorthand Reporter and Notary

Public in and for the State of New York.

0d822e95-e739-4ef2-aeb7-6d650257ad15

1   Q   Right.

2   A   I have no idea.  I have no idea.  I won't guess.

3   Q   Where was it?

4   A   I take CLE's in New York, I take CLE's in

5       Massachusetts.

6   Q   Does the firm have an FDCPA compliance officer?

7   A   Doug takes care of all of our regulatory compliance.

8   Q   Who gives the Solomon and Solomon training course?

9   A   Doug.  Well, Doug is in charge of preparing it.  We

10      have a trainer.  We have an in-house person.  I

11      don't know who it is now.  It used to be Kim Ewing.

12      I have no idea who it is now.  But we run a course

13      for all of our employees.

14  Q   And how often does that run?

15  A   As often as we're hiring.  We hire a batch of

16      people, they get trained, they get put on the floor.

17  Q   And is there a training manual that Doug has

18      authored?

19  A   Yes.  And updates regularly.

20          (Plaintiff's Exhibit 2, Three pages with Julie

21          B. Solomon's Signature, was marked for

22          identification.)

23  BY MS. FAULKNER:

24  Q   Plaintiff's 2 is three pages, each of which has a

0d822e95-e739-4ef2-aeb7-6d650257ad15

1     changed in any jurisdiction.  I wasn't allowed.

2  Q  So January 8th or thereabouts you started signing

3     papers--

4  A  -- whatever in the Connecticut -- you'd have to

5     check the Connecticut website.  The second it went

6     on the Connecticut website is the second I signed my

7     name.  Believe me, it was a very important day in my

8     life.

9  Q  But you don't remember what date it was?

10 A  No, but I'm sure I have the printout.  I'll get it

11    to you.

12 Q  Okay.  And where were you before December 12th?

13 A  Julie Farina.

14 Q  Where were you?  You said you weren't at -- oh, I

15    thought you were talking about you weren't at the

16    firm.

17 A  No, no.

18 Q  Okay.  You were not using the name Solomon?

19 A  Exactly.

20 Q  You were at the firm?

21 A  Yes.

22 Q  Okay.  So on December 12th you started using the

23    name Solomon?

24 A  On December 12th I was allowed to call myself

1           appropriate recognizance?

2     A     I don't know.

3     Q     Is Mr. Fisher the one that is recognized to

4           prosecute on all Connecticut actions?

5     A     I actually think we've changed this.

6     Q     How has that been changed?

7     A     I don't know how it's been changed.  I remember

8           taking a second look at this and changing it.  I

9           don't know.  I don't know how it's been changed.  I

10          believe it may have been changed.

11    Q     Is Mr. Fisher a Connecticut resident?

12    A     No.

13    Q     Does Mr. Fisher have an office at Danbury,

14          Connecticut?

15    A     Solomon and Solomon, PC had an office in Danbury at

16          that address.

17    Q     When was that?

18    A     I don't know the dates.

19    Q     Were you ever at that office?

20    A     I've personally not been there.

21    Q     Did Mr. Fisher operate out of that office?

22    A     Mr. Fisher is an attorney at Solomon and Solomon.

23          Solomon and Solomon had an office at that address.

24    Q     Was his office at that address as well?

1        and desist, does it still get sued?

2    A   We can settle it before.  But my -- understand, what

3        I see gets sued.  So all of my cases are in suit.

4        It's a difficult question for me to answer.  I don't

5        know.  I think the purpose of them being with our

6        law firm is to be sued, because I think they may've

7        come from another agency.  These are not first

8        placements.

9    Q   Do you think a vast majority of Citicorps then get

10       sued?

11   A   That come to Solomon?

12   Q   Right.

13   A   Yes.

14   Q   Does the system have plugged in a time frame between

15       the first letter and when the suit is brought?

16   A   See, I don't -- I don't know anything about the

17       workings of the system.

18   Q   In every Citicorp case does a demand letter go out

19       before the suit?

20   A   Yes.  A type of letter, whether it's a demand or a

21       cease and desist, yes.  But no, there is no -- I

22       understand that.  There is no set period I don't

23       think because you can send a cease and desist and

24       have a complaint go out soon thereafter or not.  It

0d822e95-e739-4ef2-aeb7-6d650257ad15

1    varies.

2    Q    Before you sign the summons and complaint do you

3         check to see how long it has been since the first

4         letter?

5    A    I check to see that there's been a letter.  I don't

6         check to see how long it's been because it doesn't

7         matter.

8    Q    So as in this case the letter was May 13th and the--

9    A    -- the return date was July 19th.

10    Q    And the complaint was prepared on May 19th.  The

11         letter May 13th, complaint drafted May 19th; is that

12         right?

13    A    I don't understand what you're asking me.

14    Q    Are those dates the interval between the first

15         letter and the time the complaint was drafted?

16    A    I don't know.  Do we have an F12 screen on this that

17         you've shown me here?  I'll take your word for it.

18         It's not relevant.  This letter is dated May 13th

19         and this letter complaint is dated May 19th, and it

20         was signed on the 23rd.  I don't see a return of

21         service.  I have no idea when she was served.  The

22         return date was July 19th.

23    Q    Was there anything untypical about that short time

24         frame?

0d822e95-e739-4ef2-aeb7-6d650257ad15

1   A    No.

2   Q    Between May 13th and May 19th?

3   A    No.

4   Q    We are looking at Exhibit 6 and can you tell me what

5        that is, please.

6   A    The whole thing or what the first page is?

7   Q    Let me see.

8   A    Because it looks like a mishmosh.

9   Q    Bates 54 to...

10  A    To 86.

11  Q    Bates 86.  And it may, indeed, be two different

12       documents.

13  A    I mean this back here starting at page 76 to 86, is

14       our placement screen.  It's the EDI screen.  So I

15       don't know if you really want these.  I'm not going

16       to tell you what to do.

17  Q    Well, I think that's how I got them as being her

18       file.  So I'm sorry if they are, indeed, separate

19       documents.

20            So pages 54 to 75 are Solomon screens; is

21       that correct?

22  A    Yes.

23  Q    And then page 76 through 86 are...

24  A    Is within that F8 that I was telling you about, is

0d822e95-e739-4ef2-aeb7-6d650257ad15

Page 48

1       think this is telling -- I believe we're saying do

2       you have correspondence that we should be seeing.

3       And see where it says "Pam with Solomon called in

4       and said there's no copy of a letter," there's no

5       cease and desist correspondence.  We're looking for

6       a letter and there's no letter.

7  Q   Are you starting with the comments on Page 82?

8  A   I'm starting with 86 and going backwards.

9  Q   Okay.  Is that the way that you would read it?

10  A   No.  I mean you can start from the top and go --

11       they're dated.  So start from...

12  Q   Start with Page 82 and tell me what happened in the

13       comment and then the dates.

14  A   Okay.  It looks like it's 10/14/05.  So Pam Ray

15       called and said -- oh, said "need."  We need a copy

16       of a letter.  She's looking for this letter.

17  Q   And that's on Page 82?

18  A   Yeah.

19  Q   And then Page 83?

20  A   This is all out of order.  May 12th, '05 is when

21       this came over to us.  This was probably referred to

22       us.  May 12th placed on notice.  That means that

23       Citibank sent it to us and it was put on notice as a

24       C and D.  Okay.  Do you see that?

0d822e95-e739-4ef2-aeb7-6d650257ad15

Page 56

1   this is still Page 1.  Okay.  But within this middle

2   piece you can tab through that and you'll get

3   different -- see where it says "Joanne Faulkner"?

4 Q Yes.

5 A If you tab there, you'll get other things.

6   Underneath you'll get an employment screen, under

7   that you might get nearbys.  It's just a skip

8   tracing screen to get information about her -- if we

9   needed to skip her.  If we didn't know where she

10   lived, it's not relevant here.

11 Q So the fact that it's in bold has no significance?

12 A No.

13 Q Nobody skip traced?

14 A No.  This wasn't a skip account.  This didn't come

15   over as a skip.

16 Q Page 60, "Permission to sue" over on the right,

17   "yes."  Does Citibank always come in with yes?

18 A Probably.

19 Q Is this information that you got from Citibank?

20 A Permission to sue?

21 Q Yes.

22 A They're all sued accounts.  Citibank didn't fill in

23   this field for us.  This is ours.  So our system

24   fills this in.

1   Q   And then next to "permission to sue," it says

2       "consumer credit."

3   A   She's a consumer.

4   Q   And is that something that you got from the Citi

5       system?

6   A   We deem all of those consumer regardless.

7   Q   So it says "consumer credit" in every file?

8   A   Yes.

9   Q   Even if it's a business name?

10  A   Yes.

11  Q   Do you get that information from Citi at all?

12  A   Whether they're consumers or not?

13  Q   Right.

14  A   I don't know.  Frankly, I don't think we care.  We

15      deem everybody a consumer for the purposes of FDCPA.

16  Q   And Page 60 also contains the information that the

17      summons was printed on 5/19 and it went to PS.

18      What's that mean?

19  A   Process server.

20  Q   Process server on the 23rd?

21  A   Hum-hum.

22  Q   And it was served on the 31st; is that correct?

23  A   Yes.

24  Q   Page 62, on the right-hand side it has miscellaneous

# DEPOSITION OF DOUGLAS FISHER
## (EXCERPTS)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------

JANET ELLIS,

Plaintiff,

- against -       Case No.:  3:05CV 1623(JBA)

SOLOMON AND SOLOMON, P.C.
JULIE S. FARINA
DOUGLAS FISHER,

Defendants.

--------------------------------------------------

STENOGRAPHIC MINUTES OF EXAMINATION BEFORE

TRIAL conducted of Defendant, DOUGLAS FISHER, held

pursuant to Notice on the 16th day of January 2008 at

119 Washington Avenue, 3rd Floor Conference Room,

Albany, New York, commencing at 1:05 p.m., before

Diane Daly-Gage, a Shorthand Reporter and Notary

Public in and for the State of New York.

d36f74d4-986b-4079-be90-29613360acd0

1  A    I would have to go through it line by line to

2        determine if I have anything in there that might

3        need clarification.  I think she was mostly

4        accurate.  There might've been a few things that I

5        might've looked at on the system.  I just can't

6        remember everything she said.  I thought she was

7        most quite wholly accurate in what she said.

8  Q    Okay.  And did you produce for me the FDCPA training

9        manual?

10  A    We produced for you the overall outline that I use

11        when I train the managers on the staff as a general

12        rule.  That would be almost an outline of the FDCPA

13        with some case annotations after it.  We also

14        produced to you some of the various tests that I use

15        when I do the training.  We also produced, I

16        believe, a number of index cards that I use which

17        has like an ABC kind of test on it.  But my

18        outline -- I also produced for you, I believe, I'm

19        not sure of the word, put it on up on the wall, it

20        projects.  It is an outline that you project on a

21        wall like a Microsoft...

22  Q    Power Point?

23  A    Power Point.  And I believe we gave you the Power

24        Point outline that I use when I go over the FDCPA

| | | |
|---|---|---|
| 1 | | training as well as at the end of that there's a |
| 2 | | number of state issues that I cover with managers, |
| 3 | | staff, if I'm training a particular group. |
| 4 | Q | When was the last time you did the training? |
| 5 | A | The training is not a specific training point.  In |
| 6 | | addition to when some employees are hired, the |
| 7 | | training it ongoing vis-a-vis e-mails, meetings.  So |
| 8 | | I would say last week was the last major e-mail that |
| 9 | | had to do with FDCPA training that would've gone out |
| 10 | | either firm-wide or to mangers or to a particular |
| 11 | | group on programing.  It's a constant.  I believe we |
| 12 | | produced to you various e-mails throughout the years |
| 13 | | that there was system programming, FDCPA issues, and |
| 14 | | those were spread out either through the attorneys, |
| 15 | | attorneys and managers, a programming change if I |
| 16 | | wanted it system-wide, letter operations, and that's |
| 17 | | all to me FDCPA training.  So it's a constant |
| 18 | | week-by-week update to me. |
| 19 | Q | Plaintiff's 12 is a coversheet of what you gave me |
| 20 | | and it's got a Bate's number on it, 223.  The latest |
| 21 | | case in that document that you gave me was dated |
| 22 | | 1997.  Does that -- is that a current document that |
| 23 | | you gave me? |
| 24 | A | Yeah.  This was -- we probably gave it to you as a |

Page 9

1      did and now we update that through e-mails and

2      through -- the training it not really through a

3      Power Point than actual discussion, as well as

4      e-mails, constant e-mails.

5  Q   Okay.  Would you -- actually, I'd like you to go

6      back and look at this to make sure that I'm correct

7      that the last case cited is 1997.

8  A   Yeah.  In this particular outline, because this

9      outline I created something separately.  This

10     outline was the last time that that was updated.  I

11     now don't use this kind of an outline.  I use the

12     Power Point for training, which we gave you, which

13     doesn't have case specific issues because it changes

14     so fast and because it's easier for me to deal with

15     e-mails and other things.  So the Power Point that

16     we gave you at the end of that packet is the most

17     common now most recent used training, and then

18     they'll take their own notes.

19        Some e-mails would go firm-wide to managers,

20     some go to just the lawyers depending on what it is,

21     some go to programming if I want to do something on

22     the system.  So those are done weekly, daily

23     whenever new issues come up.

24  Q   If you would look at Exhibit 4 from this morning's

d36f74d4-986b-4079-be90-29613360acd0

1   deposition.  Are you responsible for drafting that?

2   A   I'm responsible for creating the text of the wording

3   and the program that created it.  I didn't literally

4   write this letter.  It is a letter that I created

5   and had put onto the system for use with a limited

6   parameter of file that came from Citibank.

7   Q   If you didn't write it who did?

8   A   I wrote the letter and had it entered into the

9   system to be ordered either by me or a staff member

10   depending on a specific set of parameters that I've

11   established with Citibank.  So I drafted the

12   physical letter in form, but not the actual letter

13   because it's ordered off of a computer system

14   instead of having to type it day by day.

15   Q   What are the variables in Exhibit 4?

16   A   The variables for Exhibit 4 -- you're talking about

17   the parameters or the variables on the letter?

18   Q   On the letter.

19   A   The variables on this litter would be the name of

20   the account holder, our account number, Citibank's

21   file number -- excuse me.  Our file number, which is

22   our account number, Citibank's account number, the

23   amount due date as of which would correspond to the

24   date of the letter, the amount due.  On this letter

1    sued.  We don't just get files to send demands.

2    Files that come to my office, come to my office for

3    suit as an attorney.

4    Q   So that nowadays you get files that are going to go

5        into suit, do you put them into suit if the letter

6        gets a response, a settlement response, for

7        instance?

8    A   No.  If the letter gets a settlement response and

9        the file has not been served, then we would speak

10       with the debtor about settling it.

11   Q   Is that a routine practice?

12   A   Sure.  I wouldn't sue anybody on any account if

13       somebody was calling up to pay and haven't been

14       sued.

15   Q   Okay.  If you look at Exhibit 5, please.  Sometime

16       between May 19, 2005 and May 23, 2005 did you take

17       an oath before Julie Farina to be recognized to

18       prosecute this case?

19   A   I can't remember specifically in regard to this

20       case.

21   Q   Is it your general practice to appear in her

22       presence and take an oath?

23   A   At that time in '05 it was the practice for me to go

24       in and have her basically say whatever she said and

d36f74d4-986b-4079-be90-29613360acd0

1    have me affirm that if costs were awarded to a

2    plaintiff, I would agree to reimburse her up to

3    $250.

4         There was very, very limited time when I agreed

5    to be a recognizance for some of these files, and I

6    just cannot remember specifically looking at this

7    one, but there would've been a stack of files on her

8    desk that she would've signed and called me in.

9         Part of the reason that that stopped, as a

10    general practice it was a pain for the files to be

11    routed to Julie.  They would not route them to me

12    out of her presence and I had to go to her office

13    after she signed these and called me in, I can't

14    remember if she signed them first or after, but she

15    would call me in with one or two, a stack and do it

16    that way.  I can't remember specifically this one,

17    but that was the practice for that limited time.

18  Q   Did you have an office located in Danbury?

19  A   We did.

20  Q   Did you have an office located in Danbury?

21  A   No.  Solomon and Solomon had an office located in

22    Danbury.

23  Q   And did you work out of that office?

24  A   No, I worked out of the Albany office.

d36f74d4-986b-4079-be90-29613360acd0

1     it would be referred to me.  I generally review all

2     of the bankruptcies, unless I'm out of the office.

3     All bankruptcies are all referred to me to determine

4     if i's a pre-postpetition charge off, if it's the

5     correct account holder.

6  Q  So we have established that through the exhibits

7     that the letter to Ms. Ellis was dated May 13th?

8  A  Correct, I believe so.

9  Q  At the complaint was prepared on May 19th?

10  A  The complaint was printed May 19th.

11  Q  Is there any indication on Page 65 of that event?

12  A  On page 60.

13  Q  Page 60.  Okay.

14     And then the complaint was served on

15     May 31st?

16  A  I don't have personal knowledge of that, but that's

17     what the system says.  Yes.

18  Q  I'm sorry.  I skipped one.  The complaint was issued

19     on May 23.  So May 13 is the letter, May 19 is when

20     the complaint was printed?

21  A  Correct.

22  Q  May 23 is when it was sent to the service officer?

23  A  That's what the records indicate.  That's correct.

24  Q  Okay.  And then it was filed in court on June 13th?

d36f74d4-986b-4079-be90-29613360acd0

1      no letter would go out until we got the

2      communication from the bank, even if it took six

3      months, nothing is going to get activated.  So that

4      is a best possible world if it being loaded in my

5      system, being reviewed by one of our staff, no

6      bankruptcy or change of address coming back and no

7      communication or attorney manager or letter to be

8      looked at.

9   Q   And you did comply with that 48-hour time frame in

10     Ms. Ellis's matter?

11  A   Yes.  In this case there was no communication, debt

12     management company or attorney indicated in a note

13     or comment.  And in this case a staff member was

14     able to look at it in a timely manner.

15   Q   And which staff member was that again?

16  A   This was Sarah Berger.  She was a collection

17     assistant.

18   Q   And then on Bates 356 of Exhibit 7 talks about,

19     "Attorneys shall make the decision to file lawsuits

20     within the 30-day validation period."  How do you

21     put that into effect?

22  A   Every file referred to my firm is designated for

23     suit on my setup.  When I establish the client and

24     the original conferences and we establish what we

d36f74d4-986b-4079-be90-29613360acd0

1        will be doing for the client, I establish with the

2        client that we are not getting files for just

3        demands.  That we are going to send out a letter and

4        every account is going to be sued.  We're not going

5        to act as a collection agency sending letters and

6        negotiating over six letters, ten letters.  So every

7        file referred to our office is going to be sued.

8        However, as we discussed previously if somebody

9        wrote or called in response to an initial

10       communication, that suit may or may not go out.  But

11       the intent is to sue every file that's referred to

12       us as an attorney.

13   Q   Is the intent to allow the consumer 30 days to

14       dispute and have the opportunity to call and make

15       settlement arrangements?

16   A   I'm not sure I understand the question.

17   Q   Well, they talk about a 30-day letter.  Does Citi

18       want Solomon and Solomon to allow the debtor to have

19       the 30 days so they can either dispute or make

20       payment arrangements?

21             MR. ELLIOT:  Objection to form.

22   A   Citibank doesn't have a direction or a position on

23       how long you sue from the time your letter goes out.

24       They just indicate you're going to make a decision

d36f74d4-986b-4079-be90-29613360acd0

Page 42

1    within the 30-day period.  We have made that

2    decision based on our initial discussions with them

3    that we are going to establish in the file

4    permission to sue immediately.  If somebody gets a

5    letter and writes to us before the suit and they

6    settle or pay, they won't be served.  Otherwise, we

7    are going to serve.  That assumes in each case that

8    there's no -- to stop the suit; bankruptcy, a call

9    or a letter asking for validation.  Even if it comes

10   in before the suit that would stop the suit, we'll

11   stop the suit.  But the intent is to sue every one

12   and there's no direction by Citibank as to when you

13   do that.

14   Q   Does Citibank allow you not to send a 30-day letter?

15   A   No, that's not Citibank prerogative.  The Federal

16       Law indicates that we as an agent are going to send

17       the 30 days as a collector.  So it's irrelevant

18       whether Citibank allows or doesn't, we will send a

19       letter.  It's not a decision by Citibank.

20   Q   On page 331 of Exhibit 7.

21   A   331.

22   Q   331.  I'm right this time.  Exhibit 7.  It has Page

23       6 at the top.

24   A   I have 325, 351, 352, 356.  I'm sorry 331.

Page 46

1  Q    And initial 30-day letters as well?

2  A    Yeah.  The initial 30-day letters would be routed

3       through the bulk mail, as well as manual letters.

4       We'll bring it down to the mailroom and they'll

5       process it into it as long as we can separate it out

6       by zip.  Otherwise, they'll manually mail those.

7       But I think the bulk mail is generally letters that

8       are generated off of the system.

9  Q    Would the letter to Janet Ellis, Exhibit 4, have

10      been bulk mailed?

11 A    Yes.  This letter would've been printed off of the

12      system after the initial turnover review, set up

13      showing no bankruptcy or change of address, it

14      would've printed and if they were bulk mailing at

15      the time it would've gone into bulk mail.  I don't

16      know if we bulk mail everything every day.  It

17      probably depends on volume.

18 Q    With regard to Exhibit 5, is there anything standard

19      in a summons and complaint that tells the consumer

20      that they still may have 30 days within which to

21      dispute?

22 A    No.  Nothing in the complaint is going to reference

23      the 30 days.  It's a completely separate document.

24 Q    And what about Exhibit 4, the form letter to

1   court indicated you could.

2 Q  Right.  But you had already decided--

3 A  -- score one for me.

4 Q  You had decided that you were not ever going to

5   include the required disclosure, 1692g disclosure,

6   in the pleading?

7 A  I had already made that decision based on other

8   cases.  And after reading that one, even though they

9   allowed it in that circuit, it did not change my

10   mind that it should not be in the pleading.  I may

11   not be a Circuit judge, but I believe in my opinion

12   that it is potentially problematic to have a return

13   date on a summons or a complaint that is shorter

14   than the validation period.

15    There's a substantial volume on cases on

16   contradicting that 30-day validation, compared to

17   the substantial number of cases that indicate if you

18   send a letter with a 30-day validation period, you

19   can send subsequent communication within the 30 days

20   as long as there's no demand to pay or act within

21   the 30 days.  So in looking at the body of cases on

22   contradiction, it seems to me it's overwhelmingly

23   clear that you can send a 30-day communication, send

24   subsequent communications as long as the subsequent

Page 54

1      communication does not shorten the 30 days.

2          I am uncomfortable, again, because we have

3      states where it shortens it, and I just told you New

4      York does, to put it into the pleadings.  And I

5      believe in that case, it may have contradicted --

6      shortened, but I can't remember the exact facts.  I

7      don't remember whether they indicated in the

8      pleading to the consumer that they still had the

9      right to validate, but I know that the court

10     indicated they could keep it in a single document.

11  Q   And you're aware of the Second Circuit case that

12     also said that the 1692g notice could be in the

13     summons and complaint?

14  A   I don't remember the exact name of the case, but I'm

15     aware of a case that indicates it could.  But I

16     believe that it indicated you should explain in

17     there that notwithstanding the summons dates, you

18     still have the validation.  To me it's nothing but

19     confusing.  And again, there's nothing in the case

20     indicating you can't send it separately and

21     independent.  And that's why we make the decision to

22     send separate and independent.

23  Q   And if you look at Exhibit 5, please, the summons

24     and complaint.  The last page of that to the left

d36f74d4-986b-4079-be90-29613360acd0

Page 55

1    has a required notice; is that correct?

2  A    Yes.  Well, a required notice?

3  Q    1692e.

4  A    Yes.  It indicates that it's a communication from a

5    debt collector.  That appears in every communication

6    from our office.

7  Q    So you could put the 1692G notice in there as a

8    standard format as well?  You could have?

9  A    I do not believe I could.  I could physically.  I do

10    not believe it would be proper to do that.  The

11    section that again requires this disclosure,

12    indicates it should be a communication that has no

13    time frame with it.  I do not believe that I could

14    put it in these communications because I think it is

15    confusing.  Could we physically program it, the

16    answer is yes.  Could we do it?  Not as a matter of

17    practice or procedure, nor would the firm want to do

18    that.

19         MS. FAULKNER:  I don't think I have any

20    further questions.

21         MR. ELLIOT:  Neither do I.

22    (Whereupon, the proceedings in the

23    above-entitled matter were concluded at 3:11

24    p.m.)