UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANET ELLIS

v.                                          CASE NO. 3:05CV 1623 (JBA)

SOLOMON AND SOLOMON, P.C. ET AL.       May 19, 2008

PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

First, Defendants' opposition (Doc. No. 67) did not discuss their bona fide error defense, and thereby abandoned it. Second, Defendants did not oppose plaintiff's claim that defendants' letter was an illegal act: since the creditor could not communicate, neither could defendants as its agent. Pl. Mem III(c) at p. 9. Third, defendants did not oppose plaintiff's modest request for $1,000 statutory damages. Thus, if the Court finds even one violation, other claims are moot. Bentley v. Great Lakes Collection Bureau, Inc., 6 F.3d 60, 62 (2d Cir. 1993). Fourth, Defendants accepted all material facts -- including the only one they disputed in part, ¶ 4, by not providing competent countering evidence as mandated by D. Conn. Local Civ. Rule 56(a)3.[1] Nor could they, since defendant Fisher admittedly participated "directly or indirectly" (15 U.S. C. §1692a(6)) in collection conduct aimed at Connecticut by drafting the letter and entering into the false recognizance at issue.

---

[1] The nonmoving party may not rest on mere denials, but must present admissible evidence that specific facts create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Plaintiff raised only three other issues in her motion for summary judgment, and will address only those issues in this Reply. Defendants' additional issues will be addressed in her opposition to their cross motion.[2]

I. DEFENDANTS SERVED A LAWSUIT WITHIN THE DISPUTE PERIOD WITHOUT EXPLANATORY OR TRANSITIONAL LANGUAGE

Defendants agree with "the self-evident proposition that a second communication can, under the right circumstances, potentially overshadow or contradict a notice of rights in the first." Def. Mem. at 13. In addition to Second Circuit authority cited in the opening brief, longstanding appellate jurisprudence uniformly mandates explanatory language where suit may be filed within the dispute period. The Seventh Circuit suggested:

> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

Bartlett v. Heibl, 128 F.3d 497, 502 (7th Cir. 1997). See also Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 919-920 (7th Cir. 2004):

> A debt collector who chooses to send the § 1692g validation notice with the summons or complaint or shortly thereafter can send a carefully worded notice, such as one containing the following language, to comply with the FDCPA without disrupting the litigation process: This advice pertains to your dealings with me as a debt collector. It does not affect your dealings with the court, and in particular it does not change the time at which you must answer the complaint. The summons is a command from the court, not from me, and you must follow its

---

[2] Defendants' briefs are exact duplicates. Doc. Nos. 67, 71. Since the Court can grant summary judgment to the nonmoving party even without a cross motion, defendants could have had no legitimate reason to burden the Court and the plaintiff with duplicate filings. E.g., New England Health Care Employees Union v. Mt. Sinai Hosp., 65 F.3d 1024, 1029 (2d Cir. 1995)

instructions even if you dispute the validity or amount of the debt. The advice in this letter also does not affect my relations with the court. As a lawyer, I may file papers in the suit according to the court's rules and the judge's instructions.

The Eleventh Circuit agrees with the proposition that explanatory language must be used. In re Martinez, 266 B.R. 523, 533-537 (Bktrcy. S.D. Fla. 2001), aff'd, 271 B.R. 696, 700-702 (S.D. Fla. 2001), aff'd, 311 F.3d 1272 (11th Cir. 2002), where a conflict was found between a summons and a validation notice, even though both stated 30-day deadlines.[3]

Defendants did not cite the most recent FTC Advisory Opinion emphasizing the restrictions on overshadowing conduct or communication within the 30-day dispute period (attached). The FTC iterates the caution entailed to avoid confusing the consumer about her rights.

In sum, appellate courts insist that explanatory language be included to avoid confusing the least sophisticated consumer. Attorney Fisher, however, deems such transitional language confusing. Fisher Dep. (Doc. No. 56-2), p. 54, lines 15-19.[4]

---

[3] "However, there is no attempt to explain or reconcile the two seemingly contradictory responses or to explain that if he disputes the debt, Stern, P.A. must cease all efforts to collect the debt, including seeking a default in the foreclosure suit for Martinez's failure to respond within thirty days. As a consequence, the hypothetical least sophisticated consumer would likely respond to the foreclosure complaint within the prescribed thirty days, ignoring his FDCPA rights, as the language in the summonses and foreclosure complaint overshadows the message required to be effectively conveyed by the FDCPA Notice."
Law Office of David J. Stern, P.A. v. Martinez (In re Martinez), 271 B.R. 696, 701 (S.D. Fla. 2001)

[4]                                54

```
14    I don't remember the exact name of the case, but I'm
15       aware of a case that indicates it could.  But I
16       believe that it indicated you should explain in
17       there that notwithstanding the summons dates, you
18       still have the validation.  To me it's nothing but
19       confusing.
```

3

Defendants inexplicably rely on Durkin v. Equifax Check Servs., 406 F.3d 410, 416 (7th Cir. Ill. 2005) ("Importantly, Equifax warned the plaintiffs, consistent with the Bartlett language: 'The law does not require us to wait until the end of the 30-day period before taking action to collect this debt.'"). Moreover, Defendants attempt to cite Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643 (S.D.N.Y. 2006) wherein the court agreed with plaintiff's posture herein.[5]

Defendants' factual distinctions should not be allowed to obscure their inability to explain why this Court should depart from the salutary case law (now enacted into statute) that mandated explanatory language for the benefit of the least sophisticated consumer where, as here, the plaintiff was hit with a lawsuit well within the dispute period.

## II. DEFENDANTS SUBMITTED A FALSE RECOGNIZANCE

Defendants devoted pages 17-30 to deflecting plaintiff's claim of an FDCPA violation based on their signing or submitting a recognizance that (mis)represented to plaintiff and the state Judicial Department that defendant Fisher was a "financially responsible inhabitant" of Connecticut.

First, they claim at pages 19-24 that plaintiff could not raise the issue because it was not expressly in her complaint. Federal pleading, however, is notice pleading. "[A] complaint need not state 'facts' or 'ultimate facts' or 'facts sufficient to constitute a cause

---

[5] "See *Savino*, 164 F.3d at 86 (noting that debt collector's "violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1692g to seek validation of the debt")." Foti, 424 F. Supp. 2d at 666.

4

of action.'" Wade v Johnson Controls, Inc., 693 F.2d 19, 20 (2d Cir 1982); Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 46 (2d Cir. 1997) (the failure to cite a statute, or to cite the correct one, "in no way affects the merits of a claim"). Assuming the complaint has alleged *some* plausible claim, plaintiff may recover if she proves *any* set of facts consistent with the notice pleading allegation that defendants violated the FDCPA in connection with their collection of the account at issue. Hishon v. Spalding, 467 U.S. 69, 73 (1984); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

    Second, Defendants claim, contrary to well established principles, that the issue could not be first raised in her summary judgment motion. See, e.g., Salahuddin v. Coughlin, 781 F.2d 24, 29 (2d Cir. 1986) (summary judgment appropriate time to bring issue to court's attention); Seaboard Terminals Corp. v. Standard Oil Co., 104 F.2d 659, 660 (2d Cir. N.Y. 1939) ("if facts appear in affidavits which would justify an amended complaint, there may be ground for treating the complaint as though it were already amended to conform"); National Wildlife Federation v. Costle, 629 F.2d 118, 133 (D.C. Cir. 1980) ("This court may consider issues raised by a summary judgment motion, even where the issues are not raised in the complaint, since the motion may be deemed to have initiated the process of amendment. It would have been reversible error for the District Court to deny summary judgment where meritorious grounds are urged in the motion but not pleaded in the complaint"); Neri v. Coughlin, 1993 U.S. Dist. LEXIS 15892 (S.D.N.Y. Oct. 27, 1993) ("[S]ince defendants received notice of this claim and responded to it in their reply memorandum of law in support of their motion for summary

judgment, I will address the issue"). "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" Foman v. Davis, 371 U.S. 178, 181-182 (1962).

Third, defendants claim that the issue was not raised in her responses to discovery posed on June 26, 2006. Plaintiff had no reason to believe Attorney Fisher would misrepresent to her or to the state court that he was an inhabitant of Connecticut. Not until defendants' depositions were finally taken on January 16, 2008 (after a long struggle to take the depositions, See Doc. Nos. 20, 25, 29, 34, 49) did plaintiff learn of the prevarication. Her motion for summary judgment was filed February 25, effectively updating the discovery responses within weeks after identifying the issue.

Fourth, defendants claim at p. 24 they were prejudiced – but solely by not being able to consider this newly discovered issue in the context of settlement. Plaintiff has recorded at least five efforts to settle this matter since she filed the summary judgment motion. [Certainly there was no prejudice in terms of having to reopen discovery, since the facts of the false recognizance are undisputed.]

Fifth, defendants claim that plaintiff should have raised this then-unknown and unsuspected claim in the state court action. Even if the defect had been known, defendants are right to assert that it was a correctible defect: some other proper person

6

could have been recognized. Thus, even if plaintiff had engaged in wheelspinning in state court, any such state court initiative could not obtain recompense to deter the falsehood.

Defendants' lengthy discussion of the niceties of state pleading obscures the issue presented by plaintiff: Can lawyers engage in a misrepresentation to plaintiff and to the state court in connection with collection? The answer is No. 15 U.S.C. §1692e. It is an unequivocal violation of the FDCPA for an attorney to file a false statement under oath in state court, as Solomon and Fisher did here. See Delawder v. Platinum Financial Services Corp. 443 F.Supp.2d 942 (S.D.Ohio 2005); Kelly v. Great Seneca Financial Corp., 443 F. Supp. 2d 954 (S.D.Ohio 2005). See also Todd v. Weltman, Weinberg & Reis, Co., L.P.A., 434 F.3d 432 (6th Cir. 2006) (false statement to court resulting in garnishment of exempt funds); Lee v. Javitch, Block, & Rathbone, L.L.P., 484 F. Supp. 2d 816 (S.D. Ohio 2007) (alleging false affidavit to obtain garnishment); Billsie v. Brooksbank, 525 F. Supp. 2d 1290 (D.N.M. 2007) (garnishing wrong person).

The great weight of authority finds attorneys liable for their actions in state court lawsuits. *See, e.g.*, Heintz v. Jenkins, 514 U.S. 291 (1995); Miller v. Wolpoff & Abramson, 321 F.3d 292, 308 (2d Cir. 2003) (verified complaint filed in state collection action by defendant attorneys subject to FDCPA); Picht v. Jon R. Hawks, Ltd., 236 F.3d 446 (8th Cir. 2001) (garnishment procedure after state court suit filed); Gearing v. Check Brokerage Corporation, 233 F.3d 469 (7th Cir. 2000) (debt collector's complaint, incorrectly alleging it was "subrogated" to rights of creditor, subject to FDCPA); Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1512 (9th Cir. 1994) (postjudgment

7

garnishment); Campos v. Brooksbank, 120 F.Supp.2d 1271 (D.N.M.2000) (attorney's fee affidavit and deposition notice subject to FDCPA); Marchant v. U.S. Collections West, Inc., 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998) (garnishment). Attorneys should have to beware that what they file in state court should not be deceptive to the least sophisticated consumer or to the state court. The FDCPA provides that incentive.

Two principles apply: First, "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone. [citation omitted]." Fuentes v. Shevin, 407 U.S. 67, 82 (U.S. 1972). Second, "At the outset, it should be emphasized that the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e -- regardless of whether the representation in question violates a particular subsection of that provision." Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993). Defendants are liable for the misrepresentation.

III.  THE LETTER WAS DECEPTIVE OR ILLEGAL

Defendants' Mem. at 6-8 discusses some claims that plaintiff did not make. This Court should not accommodate defendants by issuing an advisory opinion on non-issues. There is no claim relating to service of process (despite plaintiff's confused answers to misleading deposition questions -- counsel omitted part of her allegation as a basis for questioning). Thus, Section III A does not address any issue in this case. Likewise, there is no claim that plaintiff sent a dispute letter to Solomon, so that Defendants' Section III B does not address any issue in this case.

Rather, Plaintiff's complaint specifies that the letter itself was known to be inconvenient; the letter itself expressly acknowledges as much. The letter acknowledges Citi's "notation that all communications cease and desist. Under federal law, however, we must provide you with certain disclosures." The word "however" has the meaning "in spite of that" or "nevertheless" (as used in paragraph on page 3, supra). Defendants' Section IV evades any discussion of the deception inherent in their assertion that federal law required them to communicate the FDCPA notices in a letter as an excuse to send a letter that they were admittedly aware she did not want. The Court should enter summary judgment for plaintiff on this issue in view of defendants' non-response.

## IV. ISSUES IRRELEVANT TO PLAINTIFF'S MOTION

Defendants submitted cloned briefs. Their Sections VII through VIII raise issues not addressed by plaintiff in her motion, or issues not involved in this case. Thus, plaintiff will address those issues when she addresses their cross motion.

## CONCLUSION

Summary judgment should enter for plaintiff in the amount of $1,000 with fees and costs upon application.

THE PLAINTIFF


BY____/s/ Joanne S. Faulkner___
    JOANNE S. FAULKNER ct04137
    123 Avon Street
    New Haven, CT 06511-2422
    (203) 772-0395
    j.faulkner@snet.net

      Certificate of Service

    I hereby certify that on May 19, 2008, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                    ____/s/ Joanne S. Faulkner___
                                         JOANNE S. FAULKNER
ct04137

                                       123 Avon Street
                                       New Haven, CT 06511-2422
                                       (203) 772 0395
                                                j.faulkner@snet.net



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Office of the Secretary

March 19, 2008

Barbara A. Sinsley
Manuel H. Newburger
Barron, Newburger, Sinsley & Wier, PLLC
2901 West Busch Boulevard
Tampa, Florida 33618

Dear Ms. Sinsley and Mr. Newburger:

    This is in response to the request from the USFN, formerly known as the U.S. Foreclosure Network, for a Commission advisory opinion ("Request") regarding whether the Fair Debt Collection Practices Act ("FDCPA")[1] prohibits a debt collector in the foreclosure context from discussing settlement options in the collector's initial or subsequent communications with the consumer. The Request asserts that the receipt of information about settlement options could enable the consumer to save his or her home from foreclosure. As explained more fully below, the Commission concludes that debt collectors do not commit a *per se* violation of the FDCPA when they provide such information to consumers. Moreover, the Commission believes that it is in the public interest for consumers who may be subject to foreclosure to receive truthful, non-misleading information about settlement options, especially in light of the recent prevalence of mortgage borrowers who are delinquent or in foreclosure.[2]

---

[1] 15 U.S.C. §§ 1692 - 1692p.

[2] According to press reports, in 2007, there were an estimated 2.2 million foreclosure filings in the United States, a 75% increase from 2006. The number of foreclosure filings increased late in 2007 – in December there were 215,749 foreclosure filings, a 97% increase from the number of filings in December 2006. December was the fifth consecutive month in which foreclosure filings topped 200,000. Associated Press, *Home Foreclosure Rate Soars in 2007*, N.Y. TIMES, Jan. 29, 2008, *available at* www.nytimes.com/aponline/us/AP-Foreclosure-Rates.html. Mortgage delinquency is also escalating. The number of borrowers falling behind on first-lien mortgage payments for residences during 2007 was the highest it has been since 1986 – 2.64 million borrowers fell behind on payments. Michael M. Phillips, Serena Ng & John D. McKinnon, *Battle Lines Form Over Mortgage Plan*, WALL ST. J., Dec. 7, 2007, at A1.

1

USFN submitted the Request pursuant to Sections 1.1-1.4 of the Commission's Rules of Practice, 16 C.F.R. §§ 1.1-1.4. The Request focuses on two sections of the FDCPA, Sections 807 and 809, 15 U.S.C. §§ 1692e, 1692g,[3] and presents three specific questions for consideration:

> (1) Does a debt collector violate the FDCPA when he, in conjunction with the sending of a "validation notice" pursuant to Section 809(a) of the FDCPA, notifies a consumer of settlement options that may be available to avoid foreclosure?
>
> (2) Does a debt collector violate the FDCPA when he, subsequent to sending the validation notice pursuant to Section 809(a) of the FDCPA, notifies a consumer of settlement options that might be available to avoid foreclosure?
>
> (3) Does a debt collector commit a false, misleading or deceptive act or practice in violation of Section 807 of the FDCPA when he presents to a consumer settlement options that are available to the consumer to avoid foreclosure?

The Request states that there is no case law addressing these specific questions. We address the questions *seriatim*.

USFN's first two questions specifically reference Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a). Section 809(a) provides, in pertinent part, that a debt collector must, within the first five days after the initial communication with the debtor, provide a written notice containing specific information including the amount of the debt, the debtor's right to dispute the validity of the debt in writing within 30 days, and the collector's obligation to obtain verification of the debt in response to the consumer's dispute document. Congress enacted Section 809 to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."[4]

Section 809(a) does not expressly prohibit debt collectors from adding language to the written validation notice with the mandatory disclosures. The statute also does not expressly prohibit debt collectors from presenting information to consumers about settlement options in subsequent communications. The Commission therefore concludes that there is no *per se* violation of Section 809(a) of the FDCPA if a debt collector includes information regarding foreclosure settlement options along with a validation notice or in subsequent communications after that notice is delivered.

---

[3] The Commission has considered only these sections in rendering this opinion and it should not be construed to pertain to any other section of the FDCPA, to any other law, or to any issue of legal ethics.

[4] S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

Nevertheless, collectors must take care that communicating information about settlement options does not undermine the consumer protections in Section 809(a). The touchstones of Section 809(a) are the consumer's rights to dispute his or her debt in writing within 30 days and to obtain verification of that debt from the collector. To protect these rights, in 2006 Congress amended Section 809(b) to expressly state that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt. . . ."[5] This statutory amendment ratified court decisions holding that debt collectors that provide consumers with information in addition to the mandatory disclosures violate Section 809(a) if the additional information effectively obscures the consumer's right to dispute his or her debt and obtain verification from the collector.[6] Specifically, these cases concluded that providing additional information is unlawful if it overshadows or contradicts required disclosures or creates confusion regarding the basic right to dispute the debt and obtain verification from the collector.[7] In making these determinations, courts considered the communication from the perspective of an unsophisticated consumer.[8]

In sum, with respect to USFN's first two questions presented in its Request, the Commission concludes that there is no *per se* violation of Section 809(a) if a debt collector in the foreclosure context discusses settlement options in the collector's initial or subsequent communications with the consumer. This conclusion, however, does not prevent a fact-based finding that a specific communication violates the Act if it overshadows or is inconsistent with the disclosures of the consumer's right to dispute the debt within 30 days.

USFN's third question asks whether a debt collector commits a false, misleading or deceptive act or practice in violation of Section 807 of the FDCPA when he presents to a consumer settlement options that are available to the consumer to avoid foreclosure. Section 807 of the FDCPA establishes a general prohibition against the use of any "false, deceptive or misleading representation or means in connection with the collection of any debt" and provides a list of 16 specific practices that are *per se* false, deceptive or misleading under the Act. In enacting Section 807, Congress noted that this general prohibition on deceptive collection practices would "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."[9]

---

[5] 15 U.S.C. § 1692g(b).

[6] *See, e.g., Swanson v. Oregon Credit Servs.,* 869 F.2d 1222 (9th Cir. 1988).

[7] *Id.; See, e.g.*, *Durkin v. Equifax Check Servs.,* 406 F.3d 410 (7th Cir. 2005); *Shapiro v. Riddle & Assocs.*, 351 F.3d 63 (2d Cir. 2003); *Renick v. Dun & Bradstreet Receivable Mgmt. Servs.,* 290 F.3d 1055 (9th Cir. 2002).

[8] *See, e.g., Sims v. G.C. Servs.*, 445 F.3d 959 (7th Cir. 2006) ("unsophisticated consumer"); *Smith v. Transworld Sys.*, 953 F.2d 1025 (6th Cir. 1992) ("least sophisticated consumer").

[9] S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

As a general matter, the Commission concludes that a debt collector's communication with a consumer regarding his or her options to resolve mortgage debts and to potentially avoid foreclosure would not necessarily violate either the general or specific prohibitions of Section 807. However, we also stress that a particular communication with settlement option information could be deceptive in violation of Section 807 if it contains a false or misleading representation or omission of material fact. Determining whether a specific communication is false or misleading is a fact-based inquiry that considers all the facts and circumstances surrounding the particular communication at issue.[10]

After reviewing the language of the FDCPA, its legislative history, and relevant case law, as well as the information contained in the Request, the Commission concludes that a debt collector in the foreclosure context does not commit a *per se* violation of Sections 807 or 809 of the FDCPA when he or she addresses settlement options in the collector's initial or subsequent communications with the consumer.

By direction of the Commission.

Donald S. Clark
Secretary

---

[10] *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) (noting that FDCPA expands pre-existing FTC deception authority); *see also FTC Policy Statement on Deception, appended to In re Cliffdale Associates, Inc.*, 103 F.T.C. 110, 174-84 (1984) (setting forth deception test).