UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANET ELLIS

v.                                                              CASE NO.  3:05CV 1623 (JBA)

SOLOMON AND SOLOMON, P.C.
JULIE S. FARINA
DOUGLAS FISHER                                            March 9, 2009


PLAINTIFF'S MEMORANDUM RE ATTORNEYS FEES

Plaintiff applies for an award of costs and fees against Defendants following entry of summary judgment in favor of plaintiff.  During the course of the litigation, plaintiff repeatedly offered to settle for $1,000 plus fees and costs, as the time records show. Only the fees and costs increased on both sides. Desperate to avoid travel to frigid Albany in mid-winter, plaintiff slashed her demand radically in November, 2007. After the January, 2008 Albany depositions, defendants finally made an offer in that slashed amount, when fees and costs were more than three times that amount.

Aside from persistent settlement offers, the time records show substantial reductions in the exercise of billing judgment: some zero entries for the state court litigation, even though arguably the time could be recovered;[1] some entries (+) indicating more time was incurred; some entries (++) indicating substantially more time was incurred.

---

[1] <u>Venes v. Professional Service Bureau, Inc.</u>, 353 N.W.2d  671 (Minn. App. 1984).

<u>Fee-shifting under the FDCPA.</u> The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq.* was enacted over three decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy." Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts." § 1692(b), -(c). Congress encouraged consumers to bring FDCPA actions before a Federal Article III judge by eliminating any "amount in controversy" requirement. §1692k(d). Congress also fostered enforcement of the FDCPA by enacting statutory damages and mandating that the debt collector pay the consumer's fees. 1692k(a)(3).

      Article III judges are accustomed to monetarily significant cases between corporate parties who can afford to pay their attorneys. FDCPA cases give the average citizen the same dignity and quality of justice as the rich, but have a wider public interest impact on many consumers because of the incentives embedded in the FDCPA for compliance. The consumer may have had medical or marital or employment problems, or may have become entangled with predatory lenders or identity thieves. Yet, there is the comfort of knowing that the federal bench will apply the law to protect against scofflaws and accomplish the purposes of Congress.

The FDCPA, §1692k(a)(3), provides that a defendant who fails to comply with any of its provisions "is liable" to the plaintiff for a "reasonable attorney's fee as determined by the court."

> Although private parties looking only to their own interests would not invest more in litigation than the stakes of the case, the combination of self-interest with the American Rule on the allocation of legal costs means that people can get away with small offenses. A two-day suspension may be unconstitutional, but a few hours of legal time costs more than the wages lost. Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in the single case, is sensible because it aids in the enforcement of rules of law. [citation omitted]. Put another way: Monetary awards understate the real stakes. Judicial decisions have effects on strangers. This litigation was prosecuted by a lawyer retained by a union of public employees and stoutly resisted by the county. If as the defendants say "only" $3,700 was at stake, why the tenacious resistance? Defendants do not contend that the exertion on plaintiff's side was unreasonable in relation to the defense; no more is necessary to show that the judge acted within his discretion in awarding fees exceeding the monetary recovery.

Barrow v. Falck, 977 F.2d 1100, 1103-04 (7th Cir. 1992).

Fee award sought. Plaintiff applies for a fee award of $34,895.00 at $350 per hour for 99.7 hours, plus costs of $1,413.00. In awarding fees, the Court can consider the substantial effort of plaintiff's attorney caused by defense "counsel who fought the case bitterly to the very end and even now continue their recalcitrant posture." Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan, 718 F.2d 515, 523 (2d Cir. 1983).

"While [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours

expended." Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1575 (11th Cir. 1985). To the same effect: Copeland v. Marshall, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc) (Title VII; contentious litigation strategy forced plaintiff to respond in kind); Loggins v. Delo, 999 F.2d 364, 368 (8th Cir. 1993) ($25,000.00 attorney's fee award for recovery of $102.50 in actual damages).

FDCPA Fee Standards

Where, as here, an attorneys fee provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances." De Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending). An award of fees is also mandatory in FDCPA cases. Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164 (7th Cir. 1997); Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995) (George C. Pratt, C.J.); Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"). Fees are mandatory even if there has been no award of actual or statutory damages. Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir. 1989); Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir. 1989).

> Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorneys fees it may not be possible for them to pursue small claims .... [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress

recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs.

Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn. App. 1984).

In Goins v. JBC & Associates, P.C. 2006 U.S. Dist. LEXIS 8717 (D. Conn. Mar. 6, 2006), Civil No. 3:03cv636 (JBA), this Court awarded $23,421.00 in attorney's fees at $300 per hour, and $895.19 in costs, with a modest reduction for excessive discovery efforts (inapplicable here), where defendants were represented by the same counsel as herein. These Defendants and their counsel were well aware that this was a fee-shifting matter but did not see fit to respond to plaintiff's persistent efforts to settle at $1,000 plus fees and costs, and even ignored a radically reduced demand that they later regretted.

In Nelson v. Select Financial Services, Inc., 2006 WL 1672889 (E.D. Pa. June 9, 2006), the court awarded some $24,000 in fees on a $1,000 statutory recovery. In Gradisher v. Check Enforcement Unit, 2003 U.S.Dist. LEXIS 753 (W.D. Mich. 2003), the court awarded attorney fees of $69,872.00 where the plaintiff recovered FDCPA statutory damages of $1,000.00. In Armstrong v. Rose Law Firm, P.A., 2002 WL 31050583 (D. Minn. Sep 05, 2002) the court awarded the full lodestar fee request of over $43,000 at $250 per hour when the consumer received the maximum FDCPA statutory damages of $1,000. In Perez v. Perkiss, 742 F. Supp. 883 (D. Del. 1990), an FDCPA case, the court awarded over $10,000 in fees on a $1200 jury verdict, including 11 hours defending the fee petition. See also Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216 (D.N.J. 1999) (awarding over $57,000 in fees in an FDCPA

5

case).

In <u>Freer v. State Credit Adj. Bureau, Inc</u>., Civil No. 3:97CV 1239 (GLG) (Doc. No. 71) (D. Conn. Aug. 4, 2000), the court awarded $10,000 in fees on a $500 jury verdict. In Freer, fees were awarded on a quarter hour basis; $275 per hour was found reasonable; proportionality was rejected based on <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748 (2d Cir. 1998); the time was generally not bifurcated between successful and unsuccessful claims. Some legitimate hours that the court deemed excessive were reduced.

<u>The $350 Hourly Rate is Reasonable</u>

Counsel seeks fees at $350 per hour. Please see affidavit submitted herewith, reciting comparable fee awards. "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." <u>Zagorski</u>, <u>supra</u>, citing <u>Tolentino</u>, 46 F.3d at 653.

<u>Lodestar Figure</u>

There is a strong presumption that the lodestar figure (reasonable hours times reasonable rate) represents a reasonable fee. <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 95 (1989), quoting <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 656 (1986). Currently prevailing marketplace rates establish the lodestar amount. <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 283 (1989); <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1983); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d

Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); Cohen v. West Haven Bd. of Police Com'rs, 638 F.2d 496, 506 (2d Cir. 1980).

"The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate." Bankston v. State of Illinois, 60 F.3d 1249, 1255-56 (7th Cir. 1995); Bailey v. District of Columbia, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); Gary v. Kason Credit Corp., Civil No. 3:95CV 54 (TPS) (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument).

> We want to caution, however, that district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant "market," a court may look to rates charged by those similarly situated, including looking to the rates charged by large- or medium-sized law firms, based on the widely-held premise that a client represented by a medium-sized firm pays less than a client represented by a large firm with higher overhead costs. See, e.g., *Chambless*, 885 F.2d at 1058-59; *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994). But whether or not the aforementioned premise - that the bigger the firm the higher the attorneys' hourly rates charged - is correct, and even assuming it may be that solo practitioners of equal skill, expertise and reputation, charge less than those at large- or medium-sized firms, courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate. Cf. *Miele*, 831 F.2d at 409; *Blum*, 465 U.S. at 892, 895-96 (rejecting the Solicitor General's suggestion that fees awarded to non-profit legal aid societies be based on a "cost-related standard"). Rather, overhead merely helps account for why some attorneys charge more for their services. **Indeed, it may be that in certain niche practice areas, attorneys of the highest "skill, expertise, and reputation" have decided to maintain a solo practice instead of affiliating themselves with a firm.** The reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be

determined by reference to "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Blum*, 465 U.S. at 895 n.11; *Chambless*, 885 F.2d at 1058-59. Working as a solo practitioner may be relevant to defining the market, See *Chambless*, 885 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate"), but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate.

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 98 n.6 (2d Cir. 2006)

While the Court has discretion to determine the proper fee amount, "[T]he latitude of its discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust. . . . Furthermore, where, as here, the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate." DiFilippo, 759 F.2d at 234.

"[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir. 1989) (awarding $5,500,000 in fees on $3 recovery), cited in Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992). See Laura B. Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 560-62 (1984).

Plaintiff submits that fee standards in civil rights cases are applicable here, because an important public policy was vindicated. *See* Delaware Valley, 478 U.S.

8

at 559-60; Zagorski, supra; Tolentino, 46 F.3d at 652; Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (approving lodestar method in FDCPA case); Hollis v. Roberts, 984 F.2d 1159, 1161 (11th Cir. 1983) (FDCPA award $1,500; fees granted for 24.9 hours at $150/hr., prevailing rate in the community).

No Adjustment Should Be Made

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. E.g., United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir. 1989); Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); Brinker v. Giuffrida, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

Plaintiff does not request an upward or downward adjustment, despite the arguable application of 28 U.S.C. § 1987. If defendant requests such an adjustment, factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719, may be considered. Hensley v. Eckerhart, 461 U.S. 424 (1983), however, makes clear that the Johnson factors matter only as they bear on the market rate or hours reasonably expended, or, in rare cases, if they are a basis for adjusting the lodestar. Id. at 434 n.9 ("[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"); U.S. Football League, 887 F. 2d at 415.

1.  The time and labor required (see affidavit). Plaintiff submits that the time expended in the prosecution of this action is modest, especially compared with defense fees, due to counsel's experience in consumer protection litigation. In these cases, which are small monetarily but help others because defendant changes its forms and procedures, defendants should not be encouraged to expend resources beyond the value of the case in the hope of reducing plaintiff's fee award.

2.  The novelty and difficulty of the question. Even if the case had been straightforward, the lodestar amount may not be reduced. DiFilippo, 759 F.2d at 235.

3.  The skill requisite to perform the legal services properly: plaintiff's counsel knows of very few Connecticut attorneys who purport to be able to litigate plaintiffs' Consumer Credit Protection Act cases.

4.  The preclusion of other employment. The time spent on this case was not, and could not be, spent at the same time on other cases.

5.  The customary fee is what the plaintiff's counsel requests.

6. Whether the fee is fixed or contingent. In a Consumer Credit Protection Act case, the fee is always contingent -- not on the amount of damages, but on award by the court or agreement of opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery.

"A contingent fee must be higher than the fee for the same legal services as

they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan." Posner, Economic Analysis of Law, 534, 567 (4th ed. 1992).

If contingent, the fee award should compensate counsel for the risk of receiving no compensation, Blum,  465 U.S. at 903, and to permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose."  Bayless v. Irv Leopold Imports, Inc., 659 F. Supp. 942 (D. Ore. 1987) (odometer case).

7. Time limitations imposed by the client or the circumstances (none except reasonableness).

8.   The amount involved and the results obtained.  "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases."  Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977).  The results in this case are more than the maximum amount of statutory damages for the plaintiff, due to the partial satisfaction of the state court judgment. Because the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. Cowan v. Prudential Ins. Co., 935 F.2d 522, 527 (2d Cir. 1991).

The Second Circuit rejects the "proportionality" argument as the basis for a fee award. E.g.,  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985); McCann v. Coughlin, 698 F.2d 112, 129

11

(2d Cir. 1983). Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. E.g., City of Riverside, 477 U.S. at 580 (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation); Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); United States Football League v. National Football League, 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension). Norton v. Wilshire Credit Corp., 36 F. Supp. 2d at 220 (rejecting proportionality in awarding $58,000 in fees in an FDCPA case).

In a Consumer Credit Protection Act case such as this one, the award is often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." Postow v. Oriental Bldg Ass'n, 455 F. Supp. 781, 791 (D.D.C. 1978). See also Bittner v. Tri-County Toyota, 569 N.E.2d 464. 466 (Ohio S.Ct. 1991) (the remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount cases cannot fully compensate the attorneys who take them on).

    9. The experience, reputation and ability of the attorney. Plaintiff's counsel has an outstanding nationwide reputation for her experience and ability in the consumer protection field, and is a contributing editor of the National Consumer Law Center's

Fair Debt Collection Practices manual. In 2002, she was the honored recipient of Vern Countryman Award "for excellence and dedication in the practice of consumer law on behalf of low-income consumers."

    10. The undesirability of the case (see affidavit as to risk of loss and dearth of practitioners in the Connecticut area). Consumer cases are brought in the public interest by private attorneys general, but are particularly undesirable to lawyers for many reasons. They are often labor-intensive to obtain the requisite proof to win the case. The results are uncertain so taking such cases imposes risks upon the practitioner. It becomes difficult for consumers to vindicate their rights under consumer protection statutes as a result, especially where small amounts of money are involved. It is not uncommon for defendants in consumer cases to spend a lot of time and money vigorously defending the case, as defendant did here. Compensation is both contingent upon success and deferred until after the end of the case -- when (and if) it is collected from the defendant. For these reasons, consumer protection plaintiffs' cases are not, for the most part, attractive cases to most practitioners. The vast majority of attorneys simply will not take these cases.

    11. The nature and length of the professional relationship with the client (representation limited to Consumer Credit Protection claims). Often, where an attorney has a lengthy and repeated professional relationship with a client, the client negotiates a "volume discount" for legal services. Not so here. In consumer cases, the plaintiffs are typically not a "repeat" or "volume" client.

  12. Awards in similar cases. See discussion above and affidavit for the current market rate.

<u>Purpose of fee award.</u>

  Congress enacted fee-shifting statutes to compensate "private attorneys general" and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. See H.R. Rep. No. 94-1558, at 2 (1976) (citing *Newman v. Piggie Park Enters., Inc*., 390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) (per curiam)); see generally S. Rep. No. 94-1011 (1976). The public interest in private civil rights enforcement is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, see generally S. Rep. No. 94-1011, not only to those whose cases make new law.

<u>Quaratino v. Tiffany & Co</u>., 166 F.3d 422, 426 (2d Cir. 1999).

  Attorneys fees are central to the enforcement of the Consumer Credit Protection Act (of which the FDCPA is a part) by private attorneys general. "The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy to protect consumers from fraud in the used car business." <u>Fleet Inv. Co. v. Rogers</u>, 620 F.2d 792, 794 (10th Cir. 1980) (odometer law case).

  Such fees are particularly important in consumer cases, under the principles discussed by the Supreme Court in <u>Rivera</u>, supra, a civil rights case. Consumer Credit Protection Act cases also support this proposition. See, e.g., <u>Ratner v. Chemical Bank</u>, 54 F.R.D. 412 (S.D.N.Y. 1972) ($20,000 fees, $100 damages). "[C]ourts generally

will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977).

A defendant should not be encouraged to litigate in the expectation that the Court will reduce the plaintiff's fee request, even though the defendant's fees to its own attorney are not similarly scrutinized and reduced by the Court. Cf. Eddy v. Colonial Life Ins. Co., 59 F.3d 201, 207-08 (D.C. Cir. 1995) (a fee award deters noncompliance with the law and encourages settlement); Benavides v. Benavides, 11 Conn. App. 150 (1987) (same).

An inadequate award diminishes the inducement created by fee-shifting statutes, and undermines the goal of promoting private representation in FDCPA actions. In language which could appropriately be applied to FDCPA actions, the Second Circuit noted:

> A plaintiff who is successful in establishing certain practices as violative of his constitutional rights will deter officials from continuing this conduct, and thereby help assure that others are not subjected to similar constitutional deprivations. This deterrent effect of successful §1983 actions is wholly independent of the relief which the plaintiff seeks or is ultimately awarded, and therefore it is inappropriate to condition attorney's fee awards on the nature of the relief granted.

McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. 1983).

An award should be made at a rate which recognizes the vindication of public policy expressed in the FDCPA. "The award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a system of private attorneys general]." James v. Home Constr. Co., 689 F.2d 1357, 1359 (11th Cir. 1982).

## **CONCLUSION**

The Court has already ruled that defendants violated federal law. Plaintiff, as a "private attorney general," is the "chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." This litigation accomplished the purposes of the FDCPA. Attorney's fees encourage defendants to comply with the FDCPA, as well as providing the consumer an incentive and the financial ability to bring FDCPA suits. Postow, 455 F. Supp. at 785, 786. Fees should be awarded as requested.

Plaintiff submits that the fee application is reasonable in time expended and amount requested. She respectfully submits that it should be awarded as requested.

              THE PLAINTIFF


              BY____/s/ Joanne S. Faulkner___
              JOANNE S. FAULKNER ct04137
              123 Avon Street
              New Haven, CT 06511-2422
              (203) 772-0395
              j.faulkner@snet.net

Certificate of Service

  I hereby certify that on March 9, 2009, a copy of within was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

              ____/s/ Joanne S. Faulkner___